Michael T. McColloch, Esq. (66766)
McCOLLOCH & SCHAFER, LLP
5900 La Place Court, Suite 100
Carlsbad, CA 92008-8832
Phone (760) 804-0153
Fax (760) 931-9086
Email: mmccolloch@mandclaw.com

Attorneys for Defendants

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Richard Siegel, | Case No. 09 CV 0 827 BEN (WMc) |
| Plaintiff, | COUNTERCLAIM |
| vs. | |
| Avatar, LLC and Sofia Shafquat, | |
| Defendants. | |
| Avatar, LLC and Sofia Shafquat, | |
| Counterclaimants, | |
| vs. | |
| Richard Siegel, | |
| Counterdefendant. | |

Counterclaimants Avatar, LLC ("Avatar") and Sofia Shafquat ("Shafquat") allege as follows:

### Preliminary Allegations

1. This Court has jurisdiction over this counterclaim pursuant to FRCP 13 (a) – (f), as it arises out of the same transaction or occurrence that is the subject matter of Plaintiff's claim and does not require adding another party over whom the court cannot acquire jurisdiction.

2. This Court also has jurisdiction over this counterclaim pursuant to 28 USC §1332 in that Counterclaimants are citizens of the State of California, Counterdefendant is a citizen of the State of Illinois and the amount in controversy exceeds the sum of $75,000.

3. In late 2005, Blue Star Media Group ("BSMG"), the noticed co-copyright owner of 911 Eyewitness, granted a non-exclusive license to Counterclaimant Avatar to use brief segments of footage from 911 Eyewitness in Avatar's 90-minute film 911 Mysteries. In exchange for the license, BSMG and Counterdefendant, the noticed co-copyright owner of 911 Eyewitness, received and accepted substantial consideration, including wide publicity generated to 911 Eyewitness from 911 Mysteries references and credits, and from Avatar's sale of more than 200 copies of 911 Eyewitness on Avatar's website store.

4. In October 2006, after 911 Mysteries achieved success beyond any achieved by 911 Eyewitness, with millions of viewings on the internet and being hailed as "the best 9/11 video" worldwide, Counterdefendant sent an e-mail claiming he did not know that excerpts from 911 Eyewitness were included in 911 Mysteries, and demanded payment of money. Counterclaimant Shafquat replied by e-mail that Avatar had agreed to assist with the promotion of 911 Eyewitness, but there had been no agreement for the payment of monetary compensation for the license, and referred him to his partners at BSMG for further clarification.

5. In late 2006 and 2007, Counterdefendant continued making demands for monetary compensation through his partners, which Counterclaimants refused as that was not the parties' agreement.

6. In late 2006 and early 2007, Counterclaimant Shafquat became aware that Counterdefendant was creating postings on websites www.RickSiegel.com and www.911Researchers.com, and possibly others, that Shafquat had used his footage without permission. Counterdefendant also sent Shafquat e-mails demanding that she get an intellectual property lawyer because she was "violating his rights and liberties." Counterclaimant Shafquat was compelled to retain an intellectual property attorney, who sent Counterdefendant a cease and desist letter, again advising him that Avatar had received permission from BSMG, who were joint copyright holders with Counterdefendant. In response to the cease ands desist letter, Counterdefendant posted on the Internet that Avatar had gotten "big lawyers" to go after him after stealing his footage.

7. In May 2007, 911 Mysteries was removed from Google Video and YouTube because Counterdefendant had filed a copyright infringement allegation with Google. Hundreds of persons became upset and wrote to Counterclaimant Shafquat to get the video back online. Counterclaimants were forced to file counterclaims with Google and eventually after many weeks 911 Mysteries went back up in spite of Counterdefendant's allegations. Counterdefendant continued to have 911 Mysteries removed from many users' YouTube accounts, claiming copyright infringement, and to this day a number of 10-minute segments of 911 Mysteries are not available on YouTube due to Counterdefendant's interference. Counterclaimant Avatar is informed and believes, and thereon alleges, that it lost substantial DVD sales, revenues and resulting profits, as Avatar lost the enormous world-wide exposure that came from posting 911 Mysteries at low resolution on Google and YouTube.

8. Counterclaimants are informed and believe and thereon allege that in September 2007, Counterdefendant attempted to stop 911 Mysteries from airing on Austrian television. Counterdefendant contacted the television channel and told them 911 Mysteries was a "work of fiction" and a "false documentary" and should not be shown. The station became very concerned and commenced its own investigation, which forced Counterclaimant Avatar to incur additional attorneys' fees; however, the station concluded the film was not a "false documentary" as Counterdefendant alleged, and it was aired on September 6, 2007.

9. Counterdefendant has interfered with the legitimate marketing, promotion and distribution efforts of Counterclaimants every chance and every place he can. On numerous occasions throughout 2007, 2008 and 2009, Counterdefendant posted false and defamatory statements on the internet about 911 Mysteries and Counterclaimant Shafquat, stating that she stolen his footage and placed it in a fraudulent documentary, and calling 911 Mysteries "sci-fi horror thriller."

10. In 2007, Counterdefendant prevented Counterclaimant Shafquat from posting on her "911WeKnow" YouTube account as she expected Counterdefendant would interfere with it. Numerous people who had uploaded 911 Mysteries to their YouTube accounts (along with in some

COUNTERCLAIM                                            Case No. 09 CV 0827 BEN (WMc)

3

cases hundreds of other videos in their accounts), had their accounts entirely shut down by Counterdefendant, damaging Counterclaimants' reputation and good will. Counterdefendant was able to cause segments of 911 Mysteries to be removed from YouTube, where it is only partially uploaded to this day.

11. In the summer 2008, by numerous postings on the internet, Counterdefendant publicly accused Counterclaimant Shafquat of manipulating his footage and "adding explosions" to 911 Mysteries. The allegation that the film contains "false explosions" and manipulated footage has now permeated the internet and comes up if people search for the film. This is extremely discrediting to the film and to the reputation of great credibility that the film has earned.

12. Also in the summer of 2008 Counterclaimant Shafquat learned that Counterdefendant had posted a Google aerial map of her house on his website. Some months later she learned that Counterdefendant had posted Counterclaimant Shafquat's family's information on his website, including her mother's, father's and brothers' names, ages, address, and the property value of their home and of Counterclaimant's home, causing Counterclaimant to feel insecure and violated. Her parents are 79 and 93. Shafquat became extremely frightened and concerned for her safety and the safety of her parents, as Counterdefendant had also posted on his website aerial maps and personal information, and made death threats and threats of extreme violence against other 9/11 researchers. In one case, Counterdefendant called for people to throw acid in the face of a 9/11 researcher and to kill him because he had announced his intention of making another 9/11 film.

13. In July 2008 Counterclaimant posted on the internet a false announcement out that he had sued Counterclaimant Shafquat for copyright infringement, and he was taking donations for legal fees. The posting was false because no lawsuit had been filed.

14. Additionally, Counterclaimants are informed and believe and thereon allege that Counterdefendant, acting in concert with others including but not limited to Nico Haupt, caused and/or permitted vile and pornographic videos to be posted on his website www.911Researchers.com and elsewhere, depicting the heads of 9/11 researchers and persons in the 9/11 movement, including but not limited to Counterclaimant Shafquat, pasted on bodies.

## FIRST CAUSE OF ACTION

## [DEFAMATION]

15. Counterclaimants incorporate paragraphs 1 through 14, inclusive, herein by reference.

16. On numerous occasions within the last three years, Counterdefendant posted on the internet and made the following statements, both orally and in writing, about Counterclaimants:

    a. that Counterclaimant Shafquat had used his footage without permission;

    b. that she was violating his rights and liberties;

    c. that she had retained big lawyers to go after him after stealing his footage;

    d. that 911 Mysteries was a "false documentary;"

    e. that 911 Mysteries was a "work of fiction;"

    f. that Counterclaimant Shafquat had stolen his footage and placed it in a fraudulent documentary;

    g. that 911 Mysteries was a "sci-fi horror thriller;"

    h. that she had manipulated his footage and added explosions to it;

    i. that in July 2008 he had sued Counterclaimant Shafquat for copyright infringement and was taking donations for legal fees.

17. Additionally, upon information and belief, Counterdefendant, acting in concert with others, posted in effigy pornographic images of Counterclaimant Shafquat on the internet.

18. Said statements were false and unprivileged, and known by Counterdefendant to be false when made.

19. Said statements exposed Counterclaimants to millions of persons across the internet to hatred, contempt, and ridicule, and caused them to be shunned and avoided. Said statements also injured Counterclaimants in their office, profession, trade and business, by imputing to them dishonesty, lack of credibility, and thievery, and immorality.

20. As a result of these statements of Counterdefendant, Counterclaimants have suffered general injury to their reputation, in amounts according to proof at trial.

/ / /

21. As a further result of the statements of Counterdefendant, Counterclaimant Avatar has lost substantial DVD sales, revenues and resulting profits, and had incurred costs and attorneys fees defending against Counterdefendant's actions prior to this lawsuit, all in amounts according to proof at trial.

22. As a further result of the statements of Counterdefendant, Counterclaimant Shafquat has suffered shame, mortification, hurt feelings, fear and anxiety, in amounts according to proof at trial.

23. In addition, in making these statements Counterdefendant acted with malice, oppression and fraud, entitling Counterclaimants to an award of punitive damages in an amount according to proof at trial.

## SECOND CAUSE OF ACTION
### [INVASION OF PRIVACY]

24. Counterclaimants incorporate paragraphs 1 through 23, inclusive, herein by reference.

25. All persons in California possess a Constitutional right of privacy.

26. Counterdefendant violated the right of privacy of Counterclaimant Shafquat by posting a Google aerial map of her house on his website, and by posting her family's personal information on his website, including her mother's, father's and brothers' names, ages, address, and the property value of their home and of her home.

27. Counterdefendant further violated said Counterclaimant's right of privacy when he, acting in concert with others caused and/or permitted vile and pornographic videos to be posted on the internet depicting the heads of 9/11 researchers and persons in the 9/11 movement, including but not limited to Counterclaimant Shafquat, pasted on bodies.

28. As a result of these posting, Counterclaimant Shafquat has suffered shame, mortification, hurt feelings, fear, anxiety, and insecurity, in amounts according to proof at trial.

///
///

29. In addition, in posting these matters, Counterdefendant acted with malice, oppression and fraud, entitling Counterclaimant Shafquat to an award of punitive damages in an amount according to proof at trial.

THIRD CAUSE OF ACTION

[INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS]

30. Counterclaimants incorporate paragraphs 1 through 29, inclusive, herein by reference.

31. Counterdefendant's posting on the internet of a Google aerial map of Counterclaimant Shafquat's house, and his posting of her family's personal information, including her elderly mother's and my father's names, ages, address, and the property values of their homes, while at or about the same time posting on the internet aerial maps and personal information about other 9/11 researchers, and making death threats and threats of extreme violence against them, was outrageous.

32. In addition, Counterdefendant's posting, either alone or in concert with others, of pornographic videos to depicting the heads of 9/11 researchers and persons in the 9/11 movement, including but not limited to Counterclaimant Shafquat, pasted on bodies, was outrageous.

33. By such conduct Counterdefendant intended to cause Counterclaimant Shafquat emotional distress or acted with reckless disregard of the probability that Counterclaimant would suffer emotional distress.

34. As a result of Counterdefendant's actions, Counterclaimant Shafquat suffered severe emotional distress, in amounts according to proof at trial.

35. Additionally, Counterdefendant acted with malice, oppression and fraud, entitling Counterclaimant Shafquat to an award of punitive damages in an amount according to proof at trial.

WHEREFORE, Counterclaimants pray for judgment as follows:

1. For damages for injury to their respective reputations, in amounts according to proof at trial;

2. For damages for lost DVD sales, revenues and resulting profits suffered by Counterclaimant Avatar, in amounts according to proof at trial;

3. For out-of-pocket expenses incurred defending against Counterdefendant's actions prior to this lawsuit, including costs and attorneys fees, in amounts according to proof at trial;

4. For general damages for shame, mortification, hurt feelings, fear, anxiety, insecurity and emotional distress suffered by Counterclaimant Shafquat, in amounts according to proof at trial;

5. For punitive damages in amounts according to proof at trial;

6. For attorneys fees and interest as may be permitted by law;

7. For cost of suit incurred herein; and

8. For such other and further relief as the Court deems proper.

DATED: 8-13-09            McCOLLOCH & SCHAFER, LLP

By: _____
MICHAEL T. McCOLLOCH
Attorneys for Defendants

Michael T. McColloch, Esq. (66766)
McCOLLOCH & SCHAFER, LLP
5900 La Place Court, Suite 100
Carlsbad, CA 92008-8832
Phone (760) 804-0153
Fax (760) 931-9086
Email: mmccolloch@mandclaw.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

Richard Siegel,

    Plaintiff,

vs.

Avatar, LLC and Sofia Shafquat,

    Defendants.

AND RELATED COUNTERCLAIM

) Case No. 09 CV 0 827 BEN (WMc)
)
) **PROOF OF SERVICE**

I, Jammie Smith, am and was at the time of service of the papers herein referred to, over the age of eighteen years, and not a party to this action. I am employed in the County of San Diego, California, within which county the subject mailing occurred. My business address is 5900 La Place Court, Suite 100, Carlsbad, CA 92008-8832.

On August 14, 2009, I served the following documents.

- **COUNTERCLAIM**

/ / /

/ / /

/ / /

/ / /

PROOF OF SERVICE                         Case No. 09 CV 0827 BEN (WMc)

1

Upon the following addressees:

| David M. Beckwith, Esq.<br>McDERMOTT WILL & EMERY, LLP<br>11682 El Camino Real, Suite 400<br>San Diego, CA 92130<br>Tel: (858) 720-3300<br>Fax: (858) 720-7800<br>Email: dbeckwith@mwe.com<br>*Attorneys for Plaintiff* | Daniel N. Christus, Esq.<br>Adele R. Frankel, Esq.<br>McDERMOTT WILL & EMERY, LLP<br>227 W. Monroe Street, Suite 4400<br>Chicago, IL 60606-5096<br>Tel: (312) 372-2000<br>Fax: (312) 984-7700<br>Email: afrankel@mwe.com<br>*Attorneys for Plaintiff* |
|---|---|

XX    (BY MAIL) I caused such envelope with postage thereon fully prepaid to be placed in the United States mail at Carlsbad, California.

___    (BY EXPRESS MAIL) I caused such envelope to be sent via Federal Express.

___    (BY TELECOPIER) The counsel by whole name an asterisk is affixed on the attached service list was forwarded a copy of said document(s) by telecopier.

___    (BY PERSONAL SERVICE) I caused such envelope to be delivered by hand to the offices of the addressees.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 14, 2009, at Carlsbad, California.

*/s/ Jammie Smith*
Jammie Smith